2013-1006

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

MAURY MICROWAVE, INC.

Plaintiff-Appellee,

v.

FOCUS MICROWAVES, INC., AKA FOCUS MICRO ONDES, INC.

Defendant-Appellant.

Appeal from the United States District Court
Central District of California in Case No. 2:10-cv-03902-MMM

The Honorable Margaret M. Morrow
United States District Judge

**REPLY BRIEF OF APPELLANT – NON-CONFIDENTIAL VERSION**

Michael R. Annis
JoAnn T. Sandifer
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO  63105
314.480.1500 Phone; 314.480.1505 Fax
mike.annis@huschblackwell.com
joann.sandifer@huschblackwell.com

*Counsel for Defendant- Appellant*                    *Dated:  April 8, 2013*

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellant, Focus Microwaves, Inc., aka Focus Micro Ondes, Inc. ("Focus"), certifies the following:

1.      The full name of every party represented by me is:

Focus Microwaves, Inc., aka Focus Micro Ondes, Inc.

2.      The name of the real party in interest represented by me is:

Focus Microwaves, Inc., aka Focus Micro Ondes, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

Husch Blackwell LLP (Robert C. Haldiman; Michael R. Annis; JoAnn T. Sandifer); The Eclipse Group, LLP (Stephen M. Lobbin); Burch Dallmann LLP (Travis J. Burch).

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF CONTENTS ..................................................................... ii

CONFIDENTIAL MATERIAL OMITTED ......................................... iv

TABLE OF AUTHORITIES ................................................................. v

ARGUMENT ........................................................................................ 1

I.    Summary of the Argument. ........................................................ 1

II.   The District Court's Constructions of the Disputed Claim
      Terms were in Error. .................................................................. 2

      A.    The District Court's flawed claim construction of the
            vertical limitation term "remotely adjustable…to a
            minimum of zero, said minimum distance corresponding
            to physical contact between the probe and the center
            conductor" ignores the viewpoint of a person of ordinary
            skill in the art. ................................................................ 2

      B.    The District Court's flawed claim construction of the
            vertical limitation term "remotely adjustable…to a
            minimum of zero, said minimum distance corresponding
            to physical contact between the probe and the center
            conductor" fails to interpret the disputed claim terms in
            view of the specification, for which they are a part. ......... 5

      C.    Focus's interpretation of the vertical limitation term
            "remotely adjustable…to a minimum of zero, said
            minimum distance corresponding to physical contact
            between the probe and the center conductor" would not
            render claim 1 of the '293 patent indefinite. ................... 7

      D.    By improperly reading a limitation into Claim 1 of the
            '293 patent and failing to give due consideration to the
            intrinsic record, the District Court erred in its
            construction of the horizontal limitation term
            "…adjustable independently, from a minimum of zero to

a maximum of one half of a wavelength at the lowest frequency of operation…" in the '293 patent. ...............................10

III.  The District Court's Failure to Construe the Disputed Term in Claim 1 of the '069 Patent was Plain Error and Led to its Erroneous Summary Judgment Ruling of Infringement of the '069 Patent in Favor of Maury. ..................................................12

IV.  In Granting Summary Judgment Against Focus as to the '293 Patent, the District Court Erred in its Reliance Upon Flawed Constructions of the Disputed Claim Terms and Further Improperly Resolved Genuine Issues of Material Fact in Favor of Maury, the Moving Party. ...................................................16

   A.  The District Court erred in resolving contested issues of material fact in favor of Maury as to whether, for the horizontal limitation, the probes of the accused tuner can be adjusted to a position in which they are directly next to one another. ................................................................16

   B.  The District Court erred in resolving contested issues of material fact in favor of Maury as to whether, with the vertical limitation the probes of the accused tuner are adjustable to a minimum distance corresponding to physical contact between the probe and the center conductor. ......................................................................19

V.  The District Court Abused its Discretion in Denying Focus's Motion to Add Counterclaims of Invalidity of the '069 Patent. .............22

   A.  The need to amend was prompted by Maury's 11th hour change in its infringement theory....................................22

   B.  Maury would not have suffered any prejudice if leave had been granted.............................................................25

VI.  Maury's Attempt to Challenge the Validity of Claim 1 of the '293 Patent in this Proceeding is Improper. ..............................29

CONCLUSION.................................................................31

CERTIFICATE OF SERVICE ..........................................32

CERTIFICATE OF COMPLIANCE...................................33

## CONFIDENTIAL MATERIAL OMITTED

The following describes the general nature of the confidential material omitted from this Non-Confidential Brief:

- The material omitted on pages 17 through 19 describes the structure, components, and operation of Maury's technology

- The material omitted on pages 20 and 21 describes Maury's technology and contain references to the deposition transcript of Maury's expert witness opining on the operation of that technology.

# TABLE OF AUTHORITIES

*Advanced Micro Devices, Inc. v. Samsung Elecs., Co.,*

> No. C 08-00986 SI, 2009 WL 890515 (N.D. Cal. April 1, 2009).............28

*AFG Indus., Inc. v. Cardinal IG Co., Inc.*,

> 239 F.3d 1239 (Fed. Cir. 2001) ...................................................................3

*AK Steel Corp. v. Sollac*, 344 F. 3d 1234 (Fed. Cir. 2003) .................................28

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................. 17, 22

*Arbitron, Inc. v. Int'l Demographics, Inc.,*

> No. 2:06-CV-434, 2008 WL 4755761 (E.D. Tex. Oct. 29, 2008) ...... 27-28

*Ariba, Inc. v. Emptoris, Inc.,*

> No. 9-07-cv-0090, slip op, (E.D. Tex. Oct. 17, 2008)...............................24

*ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed. Cir. 1998) ..................................22

*Block v. First Blood Associates*, 988 F.2d 344 (2nd Cir. 1993) ..........................29

*Breakdown Servs. Ltd. v. Now Casting, Inc.*,

> 550 F.Supp.2d 1123 (C.D. Cal. 2007)......................................................26

*Datamize, LLC v. Plumtree Software, Inc.*,

> 417 F.3d 1342 (Fed. Cir. 2005) ..................................................................7

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987) ................. 26, 28

*DSC Communications Corp. v. Pulse Communications, Inc.*,

> 170 F.3d 1354 (Fed. Cir. 1999) ................................................................15

*El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473 (1999) ....................................30

*Eminence Capital, LLC v. Aspeon, Inc.*,

    316 F.3d 1048 (9th Cir. 2003) ................................................................25

*Lexion Medical, LLC v. Northgate Tech., Inc.*,

    641 F.3d 1352 (Fed. Cir. 2011) ................................................................5

*MASS Engineered Design, Inc. v. Ergotron, Inc.*,

    250 F.R.D. 284 (E.D. Tex. 2008) ...................................................... 26-28

*Morongo Band of Mission Indians v. Rose*,

    893 F.2d 1074 (9th Cir. 1990) ................................................................25

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,*

    806 F.2d 1565 (Fed. Cir. 1986) ................................................................9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................... 3, 5, 11

*Radio Sys. Corp. v. Lalor*, 709 F.3d 1124 (Fed. Cir. 2013).......................... 29-31

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,

    537 F.3d 1357 (Fed. Cir. 2008) ........................................................... 7-8

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,

    655 F.3d 1364 (Fed. Cir. 2011) ........................................................... 7-9

*Technology Patents LLC v. T-Mobile (UK) Ltd.,*

    700 F.3d 482 (Fed. Cir. 2012) ................................................................15

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,

    247 F.3d 1316 (Fed. Cir. 2001) ........................................................... 18-19

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,

    595 F.3d 1340 (Fed. Cir. 2010) .................................................10

*TypeRight Keyboard Corp. v. Microsoft Corp.*,

    374 F.3d 1151 (Fed. Cir. 2004) .................................................30

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,

    587 F.3d 1339 (Fed. Cir. 2009) .................................................11

*Vehicle IP, LLC v. General Motors Corp.*,

    306 Fed.Appx. 574 (Fed. Cir. 2009) .........................................15

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)................11

*Westlands Water Dist. v. United States*, 100 F. 3d 94 (9th Cir. 1996) ...............26

## ARGUMENT

## I.  SUMMARY OF THE ARGUMENT

The district court's Claim Construction Order, Order on Motions for Summary Judgment and Order denying Focus's Motion for Leave to File Amended Counterclaims are plagued by errors warranting correction of the district court's claim construction, reversal of the judgment of the district court and remand for further proceedings consistent with this Court's decision.

First, the district court erred in construing the '293 patent claim terms at issue here by failing to take into account the perspective of one of ordinary skill in the art and construing the claim terms in a vacuum, without properly considering the intrinsic evidence that supports Focus's proposed constructions.

Second, the district court erred in declining to construe a disputed claim term of the '069 patent, once again failing to consider how claim terms would be understood by one having ordinary skill in the art.  As a result, the district court erroneously granted summary judgment against Focus as to direct infringement of claim 1 of the '069 patent.

Third, in granting summary judgment against Focus as to the '293 patent, the district court erred in its reliance upon flawed constructions of disputed claim terms, noted above, and further improperly resolved genuine issues of material fact in favor of Maury, the moving party.

Lastly, the district court abused its discretion in denying Focus's Motion to Amend its answer to add counterclaims of invalidity of the '069 patent.

## II.   THE DISTRICT COURT'S CONSTRUCTIONS OF THE DISPUTED CLAIM TERMS WERE IN ERROR.

There are two key terms in the '293 patent.  First, the term "...physical vertical distance between each probe and the center conductor of the airline to be remotely adjustable…to a minimum of zero," is sometimes referred to as the "vertical limitation."  Second, the term "physical horizontal position of each microwave probe…from a minimum of zero to a maximum of one half of a wavelength at the lowest frequency of operation," is sometimes referred to as the "horizontal limitation."  The district court committed the same error in construing both of these terms.

### A.   The district court's flawed claim construction of the vertical limitation term "remotely adjustable…to a minimum of zero, said minimum distance corresponding to physical contact between the probe and the center conductor" ignores the viewpoint of a person of ordinary skill in the art.

The district court construed the term "remotely adjustable to a minimum of zero, said minimum distance corresponding to physical contact between the probe and the center conductor . . ."[1] claim term in the '293 patent to mean "adjustable to the point where the probes make physical contact with the center conductor." Maury urges this Court to affirm the district court's interpretation, describing the

---

[1] See '293 Patent, Claim 1, Col. 7, lines 20-21. (A207.5)

2

same as nothing more than the "plain and ordinary meaning" of the disputed claim language.  (Appellee's Br. at 9)  The district court's construction, however, fails to recognize that while the words of a claim are generally given their "ordinary and customary" meaning, the Federal Circuit has "made clear… that the ordinary and customary meaning of a claim term is the meaning that the term would have **to a person of ordinary skill in the art in question at the time of the invention…**" and "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (emphasis added).

Here, the parties agree on the education and skill level of the person having ordinary skill in the art to which the subject patents are directed.  Maury's own expert acknowledges that a person of ordinary skill in the art of the '293 patent would be a professional with at least an undergraduate degree in Electrical Engineering, possibly a Master's degree, with a focus on microwave measurements and four-to-six years of work experience in a laboratory work environment. (A3006)  This skill set is far from that possessed by a lay person.  As Focus demonstrated in its opening brief, rather than considering how a person in the pertinent technical field would understand the meaning of the disputed term, the district court adopted an overly simplistic layman's interpretation, thereby

improperly substituting its own judgment as to its "ordinary meaning" of the disputed claim term. By doing so, the district court committed reversible error. *See AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1249 (Fed. Cir. 2001) (concluding trial court committed error by adopting a claim construction inconsistent with how persons of ordinary skill would interpret the disputed claim terms). In urging this Court to adopt the district court's flawed construction, Maury relies upon the same faulty premise that abjectly ignored the viewpoint of persons of ordinary skill in the pertinent art.

A person of ordinary skill in the art of microwave tuning would understand this claim limitation to define the minimum boundary at which meaningful measurement for the tuner ends (*i.e.,* where corona discharge occurs). (*See* Appellant's Br. at 32-33) As Dr. Fadhel Ghannouchi explained, one of ordinary skill in the microwave tuning arts described in the '293 patent would undoubtedly understand that microwave tuning requires a space or gap between the metallic probe and the transmission line carrying the electrical signal (*i.e.*, the center conductor) and that when the probe mechanically touches the transmission line, a short circuit occurs and all useful measures cease for the tuner. (A854) Maury's own expert admitted that it would make no sense for the claim limitation in question to require physical or mechanical touching because physical touching would be "bad" and would disable the tuner's functionality. (A1789) In other

4

words, mechanical or physical touching of the tuner slug and the transmission line will destroy the tuner itself.

In its response, Maury principally argues that what happens when the probes touch the center conductor is irrelevant because the district court's construction did not require the probes to touch the center conductor (or transmission line) during actual microwave tuning or measurement taking.  (Appellee's Br. at 18)  Maury reasons that when measurements are not being taken, the center conductor is not carrying an electrical signal and thus a short circuit cannot occur.  Maury's suggestion is nonsensical and, not surprisingly, Maury has failed to cite any authority in support of this argument.  This Court, however, "prefers a claim interpretation that harmonizes the various elements of the claim to define a workable invention."  *Lexion Medical, LLC v. Northgate Tech., Inc.*, 641 F.3d 1352, 1356 (Fed. Cir. 2011) (citing *Phillips*, 415 F.3d at 1312).  Maury's argument regarding the interpretation of the claims in the context of a non-functioning tuner should be rejected.

> **B.    The district court's flawed claim construction of the vertical limitation term "remotely adjustable…to a minimum of zero, said minimum distance corresponding to physical contact between the probe and the center conductor" fails to interpret the disputed claim terms in view of the specification, for which they are a part.**

In *Phillips,* this Court emphasized that patent claims do not stand alone but rather are part of a "fully integrated written instrument," consisting principally of a

specification that concludes with the claims." *Phillips*, 415 F.3d at 1315.  Further, the specification cannot be ignored, as it "is always highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.*

Unfortunately, the district court's construction of the term "remotely adjustable to a minimum of zero, said minimum distance corresponding to physical contact between the probe and the center conductor . . ." is not supported by - and in fact contradicts - the '293 patent's specification.  The '293 patent's specification provides no support for the district court's requirement that the probes touch the center conductor.  Fig. 11d shows that some distance is always maintained between the tuning slug and the center conductor. That is, they never actually mechanically touch.  (A204)  The specification makes clear that because of the disastrous problem created by corona discharge, the exact opposite is desired.  (A854)  The district court's construction simply ignores this intrinsic evidence.

Maury endeavors to dismiss the intrinsic evidence as irrelevant because Focus purportedly failed to act as its own lexicographer by re-defining "minimum of zero" or "physical contact" to mean "sufficiently close to the center conductor to continue to achieve impedance matching tuning." (Appellee's Br. at 13)  That is, Maury suggests that Focus's construction requires changing the meaning of the disputed term as it could be understood by the person of skill in the relevant art

after reviewing and understanding the intrinsic record.  Not so.  Focus's proposed construction does not rely on a special meaning or definition for educating the person of skill in the relevant art.  Rather, the district court failed to interpret the disputed claim term in a manner consistent with its ordinary meaning as understood by one of ordinary skill in the art, reading the term in the context of the entire '293 patent, including its specification.

> **C.    Focus's interpretation of the vertical limitation term "remotely adjustable...to a minimum of zero, said minimum distance corresponding to physical contact between the probe and the center conductor" would not render claim 1 of the '293 patent indefinite.**

Simply stated, this Court should reject Maury's argument that Focus's proposed interpretation is indefinite because it would render "physical contact" dependent upon the customer's use of the accused tuner.  Further, this Court should also reject Maury's contention that Focus's proposed interpretation would make the "physical contact" limitation meaningless because there purportedly is no one point where corona discharge occurs.  To be indefinite, claims must be "not amenable to construction" or "insolubly ambiguous."  *See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1373 (Fed. Cir. 2011) (citing *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005)).  A claim can be considered "insolubly ambiguous" only when it fails to provide sufficient clarity about the bounds of the claim to one skilled in the art.  *Id.* (citing

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1371 (Fed. Cir. 2008)).  Absolute clarity is not required and a claim term may be definite even when discerning the meaning is a "formidable [task] and the conclusion may be one over which reasonable persons will disagree." *Id.* (citations omitted).

In *Star Scientific*, the patent-in-suit claimed tobacco curing methods which create a "controlled environment" that controls a number of variable conditions, such as humidity, temperature and air flow. *Id.* at 1368.  The court construed the term "controlled environment" and the parties disputed whether a person of ordinary skill would know how to establish a controlled environment to perform the claimed method. *Id.* at 1364-65.  Although the patent-in-suit did not give exact numbers measuring the variables of humidity, temperature and airflow, the record reflected that a person of ordinary skill in the art would possess adequate understanding to manipulate these variables to create a controlled environment. Accordingly, this Court concluded that the term "controlled environment" is not insolubly ambiguous and, therefore, is not indefinite. *Id.* at 1374.

Even if one assumes—as Maury argues— that the point at which corona discharge occurs may be variable, Focus's interpretation would not render claim 1 indefinite.  As Dr. Ghannouchi explained, in the prior art there was a ceiling on the power levels that could be "tuned" because the boundary of useful operating range of the probe was too far away from the center conductor to get the high impedance,

8

high reflection coefficients needed. (A866-A867) That is, the probe could not get close enough to the center conductor (i.e. transmission line) without arcing and shorting out the tuner. (A867) However, the invention the '293 patent cures that defect and allows one skilled in the art to obtain high impedance and high reflection coefficients with pre-matched tuners without causing a short or corona discharge. *Id.* Figures 11a-11d of the '293 patent illustrate this point. *Id.*

Moreover, Dr. Ghannouchi shows how one skilled in the art can find the minimum operating range for microwave tuners—*i.e.*, the short circuit position representing "zero"—which can easily be detected using a network analyzer. (A855) One of skill in the art understands that a flat line output on an attached oscilloscope that is a flat line represents a short circuit situation. (A857-A861) Even assuming for argument's sake that, as Maury contends, the point of corona discharge may vary depending upon the customer's use of the accused tuner, it does not follow that the "corresponding to physical contact" term is meaningless or indefinite under Focus's proposed interpretation. *See Star Scientific*, 655 F.3d at 1374 ("[T]he record demonstrates that tobacco curing variables are well known in the tobacco industry. In that context, the term 'controlled environment' falls well within the bounds of ordinary skill in the art."); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1576 (Fed. Cir. 1986) ("The phrase 'so dimensioned' is as accurate as the subject matter permits, automobiles being of various sizes. . .

As long as those of ordinary skill in the art realized that the dimensions could be easily obtained, §112, 2d ¶ requires nothing more.").

**D.     By improperly reading a limitation into Claim 1 of the '293 patent and failing to give due consideration to the intrinsic record, the District Court erred in its construction of the horizontal limitation term "…adjustable independently, from a minimum of zero to a maximum of one half of a wavelength at the lowest frequency of operation…" in the '293 patent.**

The '293 patent specification provides no support for the district court's construction of the term ". . . adjustable independently, from a minimum of zero . . ." to mean "adjustable independently, from a position in which the probes are directly next to one another with zero horizontal separation between them." Further, neither the district court's claim construction, nor Maury's brief, points to any claim language that requires the probes to mechanically touch. Simply put, the district court's construction of this term impermissibly imports this limitation into claim 1 of the '293 patent. As it is abjectly improper for the district court to import limitations into the claims from the specification, the district court cannot import the limitation requiring the probes to touch when that limitation is neither required by the claim nor is it even found anywhere in the '293 patent specification. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010).

The district court's construction is further flawed in that it considers the disputed claim language in a vacuum, ignoring the intrinsic record—*i.e.,* the '293

10

patent specification—as well as the expert testimony that supports Focus's construction. As this Court has consistently and unequivocally counseled, the intrinsic record is the primary tool to supply the context for interpretation of disputed claim terms. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here, the specification describes the claimed invention as a pre-matched tuner system that "allows the generation of a very high reflection factor **at any point of the reflection factor plane (Smith Chart).**" (emphasis added). (A205) Rather than pointing to anything in the specification that contradicts this, or that supports the district court's interpretation requiring that the probes physically touch, Maury simply argues that the terms "full phase coverage" and "Smith Chart" fail to appear anywhere in claim 1. It is axiomatic, however, that claim terms are not construed in a vacuum and the court must read the claim in the context of the specification of which they are a part. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1347 (Fed. Cir. 2009) ("…claims must be read in view of the specification, of which they are a part.") (citing *Phillips*, 415 F.3d at 1315).

The District Court erred in construing claim 1 of the '293 patent by reading into the claim a requirement that the probes mechanically touch, when neither the language of the claim nor the specification calls for the probes to mechanically touch. The court's erroneous construction completely ignored the specification's

11

teaching that the claimed horizontal movement of the probes corresponds to the standard measures made—360 degrees around the Smith Chart or one half a wavelength.  A person of ordinary skill in the art would understand claim 1 to be consistent with this teaching.  (A2866 - 2867)

## III.  THE DISTRICT COURT'S FAILURE TO CONSTRUE THE DISPUTED TERM IN CLAIM 1 OF THE '069 PATENT WAS PLAIN ERROR AND LED TO ITS ERRONEOUS SUMMARY JUDGMENT RULING OF INFRINGEMENT OF THE '069 PATENT IN FAVOR OF MAURY.

First, Maury's suggestion that the district court actually construed the disputed terms of the '069 patent is simply unfounded.  As the district court concluded in its claim construction order, "[i]ndeed, the court agrees [with Maury] that this term does not require construction."  (A110)  This failure was error as it lead to the exclusion of a necessary limitation for claim 1 of the '069 patent.  As understood by one skilled in the microwave tuning arts, claim 1 of the '069 patent requires the "probe" element to be electromagnetically "coupled" to the claimed system's "transmission line."  Such "coupling" necessarily requires an electrically energized closed circuit.  Otherwise, there could be no "coupling."  How can the claimed "probe" be "coupled to [the] signal transmission line" in a non-contacting relationship? The answer is found in the '069 patent itself.  "Coupled to" is, of course, past tense and necessarily requires an existing relationship between the probe and signal transmission line that, by the very words used by the patentee,

cannot amount to mechanical touching. That concept makes sense, particularly in light of the vertical limitation of the '293 patent, noted above in sections II.A, II.B, and II.C.

Further, the '069 patent is directed to a series of system claims. As shown, the system of claim 1 requires a probe "coupled to [the] signal transmission line…in a non-contacting relationship…" (A224) Because the accused Focus components are not a "system" and, even if connected to one another, lack each of the necessary limitations required by claim 1 of the '069 patent, those components cannot infringe claim 1.

In order for the claimed probe to be electromagnetically "coupled" to the claimed signal transmission line, the components must form a closed circuit and be energized so that that the claimed system can conduct "measurements on a device under test (DUT)…". (A223) To close the circuit and energize the claimed system, it must have the "measurement equipment," such as a "vector network analyzer" or a large circuit network analyzer. (A210; A214; A218) Thus, the "measurement equipment" is a necessary and required limitation of claim 1 of the '069 patent.

The district court's failure to interpret the disputed language of claim 1 led to its erroneous finding of infringement by Focus sending a quotation Northrop Grummen including merely (1) a tuner and (2) an exterior IV probe." (A2223) The

accused Focus components, even if connected to one another, are incapable of the required electromagnetic coupling and accordingly cannot infringe the '069 patent as a matter of law.

In support of its arguments, Maury cites to a single, inapposite case in an effort to prove direct infringement by the accused Focus components.  In *DSC Communications Corp. v. Pulse Communications, Inc.*, 170 F.3d 1354 (Fed. Cir. 1999), this Court reviewed the following apparatus claim:

> "An apparatus for providing a voice frequency (VF) path for on-hook VF transmission through each of a plurality of channel units, each including a subscriber line interface circuit chip (SLIC), to a subscriber telephone instrument in a digital loop carrier system for proving POTS-type telephone service using DC signaling to the subscriber telephone instrument comprising the combination of…."

*Id.* at 1366.  Maury cites to a one-paragraph discussion of *alternative* theories rejected by the court in *Pulse*, and in doing so ignores the principal issues reviewed by the Court – whether the accused apparatus, in fact, constituted a "telephone instrument" as recited by the patent's claim:

> "If the [accused] equipment requests service using DC signaling, there is no 'telephone service using DC signaling to the subscriber telephone instrument,' …because in that case the service using DC signaling would extend only to the [accused] equipment, **which does not constitute a 'telephone instrument**.'"

*Id.* at 1367 (emphasis added).  The Court went on to hold that whether the accused apparatus included all of the necessary components presented "a

14

genuine issue of fact material to the question of infringement" and vacated the district court's summary judgment order. *Id.*

Here, the district court erred by ignoring the dispute between the parties as to the scope of claim 1 of the '069 patent. Focus's position – that the '069 patent describes a system including all of its operational components, including measurement and capacity for electromagnetically "coupling" the probe to a signal transmission line, is supported by recent case law analyzing system claims. *Technology Patents LLC v. T-Mobile (UK) Ltd.,* 700 F.3d 482, 497-498 (Fed. Cir. 2012) (non-infringement affirmed - unlike patented system, accused paging system did not allow user to designate a recipient and create an ordered list); *Vehicle IP, LLC v. General Motors Corp.*, 306 Fed.Appx. 574, 577 (Fed. Cir. 2009) (system claim not infringed - mere numerical value input of accused device could not be considered "coordinate" listed in system patent claim).

Maury failed to address Focus's principal argument with respect to the district court's error concerning the '069 patent: Focus's accused components cannot comprise a "system" and cannot, even when combined, include each of the necessary elements of claim 1 of the '069 system patent. Without these necessary operational components, the accused Focus equipment is incapable of direct infringement.

**IV.  IN GRANTING SUMMARY JUDGMENT AGAINST FOCUS AS TO THE '293 PATENT, THE DISTRICT COURT ERRED IN ITS RELIANCE UPON FLAWED CONSTRUCTIONS OF THE DISPUTED CLAIM TERMS AND FURTHER IMPROPERLY RESOLVED GENUINE ISSUES OF MATERIAL FACT IN FAVOR OF MAURY, THE MOVING PARTY.**

Because the district court's construction of the terms "…adjustable independently, from a minimum of zero to a maximum of one half of a wavelength at the lowest frequency of operation…" and "…to a minimum of zero, said minimum distance corresponding to physical contact between the probe and the center conductor…" in the '293 patent were erroneous, the district court's grant of summary judgment of non-infringement of the asserted claims of the '293 patent was likewise in error.  (*See* Appellant's Br. at 46)  However, even under the district court's flawed constructions of these key claim terms, summary judgment in favor of Maury should not have been granted because genuine issues of fact remain regarding whether Maury's accused tuner infringes claim 1 of the '293 patent.

**A.    The District Court erred in resolving contested issues of material fact in favor of Maury as to whether, for the horizontal limitation, the probes of the accused tuner can be adjusted to a position in which they are directly next to one another.**

In its opening brief, Focus calls into question the district court's factual findings that the accused tuner is equipped with an optical sensor that detects when the probe carriages reach a certain distance apart and thus prevents them from moving any closer together.  (Appellant's Br. at 47-48)  More specifically, Focus

16

cites to record evidence demonstrating that the optical sensors in the accused tuner do not function as Maury contends.    *Id.*

**REDACTED**


[2] Maury attempts to refute this evidence, creating an issue of fact that should not have been resolved by the district court.  To the contrary, the district court was bound to resolve this disputed issue of fact in favor of the non-movant, Focus.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).    The district court's failure to do so warrants reversal of its summary judgment finding of non-infringement of the '293 patent.

Likewise, Focus's opening brief also points to evidence establishing that Maury's accused tuner was designed in a manner that allows for modification by Maury or its customers into an infringing assembly, for use in an infringing manner.   (Appellant's Br. at 48-50)

**REDACTED**

---

[2] Pursuant to Federal Circuit Rule 28(d)(1)(A), all highlighted portions of this Brief indicate confidential material.

**REDACTED**

Once again, Maury simply offers purportedly countervailing evidence that, at most, creates an issue of fact that the district court, likewise, improperly resolved against the non-movant, Focus. For this reason, the district court's grant of summary judgment of non-infringement of the '293 patent must be vacated.

Maury cites *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) for the proposition that because a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement. However, *Telemac* is distinguishable from the facts

presented here because the defendant in *Telemac* built into the accused system's software program a restriction that specifically prevented the users of the accused system from operating the accused system in an infringing manner. *Id.* Here, Maury's accused tuner lacks any such restriction to prevent a user from altering or operating the accused tuner in an infringing manner.

**REDACTED**

(*See also* Appellant's Br. at 48-50). At a minimum, Focus has put forth evidence creating an issue of fact and the district court's failure to resolve this issue of fact in Focus's favor and its entry of summary judgment of non-infringement of the '293 patent were in error.

> **B.** **The District Court erred in resolving contested issues of material fact in favor of Maury as to whether, with the vertical limitation, the probes of the accused tuner are adjustable to a minimum distance corresponding to physical contact between the probe and the center conductor.**

Maury relies upon the mistaken assertion that Maury's accused tuner purportedly does not meet the "vertical minimum of zero limitation." Maury relies on this factual assumption as its basis for arguing that the district court did not err in granting summary judgment of non-infringement of the '293 patent. However, because this factual assumption is NOT an undisputed fact, Maury's argument in

support of the district court's summary judgment ruling must fail.  (Appellant's Br.

at 50-54)

**REDACTED**

**REDACTED**

Maury fails to do anything other than point to its own purportedly countervailing evidence that the probes of Maury's accused tuner do not touch the center conductor. At most, Maury has done nothing more than created an issue of fact as to whether Maury's accused tuner meets the claim limitation in question. This factual dispute alone should have precluded summary judgment of non-infringement of the '293 patent. Summary judgment of non-infringement is only appropriate when, drawing all reasonable factual inferences in favor of the non-movant (in this case, Focus), no reasonable jury could conclude otherwise. *Anderson*, 477 U.S. at 255; *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed. Cir. 1998). Maury has not satisfied this standard and for that reason, the district court's summary judgment determination of non-infringement of the '293 patent cannot stand.

## V. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING FOCUS'S MOTION TO ADD COUNTERCLAIMS OF INVALIDITY OF THE '069 PATENT.

### A. The need to amend was prompted by Maury's 11th hour change in its infringement theory.

Maury initiated the underlying lawsuit by accusing Focus of infringing its '069 patent based upon the "ZVX Plus set up" using a two wire loop IV probe and harmonic tuner. (A491 – A492) On the last possible day to submit its infringement contentions, Maury accused Focus of infringing the '069 patent based upon the "SWAP-X402" using a "wave probe" containing a single wire loop.

(A494)  This maneuver, combined with the district court's decision to set the deadlines for infringement and invalidity contentions on the same day, placed Focus in the untenable position in which it could not respond to Maury's brand new infringement theory.  Focus should have been allowed to amend its pleadings to respond to Maury's last-minute gambit and the district court abused its discretion when it denied Focus's motion for leave.

Early in the litigation, the parties submitted their Joint Rule 26(f) Report and Discovery Plan.  (A266-A347)  In the Report, Focus proposed that the district court adopt the Local Patent Rules of the United States District Court of Northern California ("N.D. Cal. Patent Rules") with respect to disclosures including the time line dictated by those rules.  (A273)  Notably, the N.D. Cal. Patent Rules separate the deadlines for disclosing Infringement and Invalidity contentions by a minimum of 45 days.[3]  Consistent with the N.D. Cal. Patent Rules, Focus proposed that the deadline to submit Invalidity Contentions be set 45 days after the deadline for submitting Infringement Contentions.  (A274)  Maury made no suggestions regarding a proposed deadline for Infringement and Invalidity Contentions.  *Id.*

Rather than adopt Focus's scheduling suggestion, the district court elected to set the deadlines for submitting Infringement and Invalidity Contentions on the

---

[3] Focus respectfully requests that the Court take judicial notice of the Local Patent Rules of the United States District Court of Northern California, which may be located at the following url:  http://www.cand.uscourts.gov/localrules/patent

same day, December 20, 2010.    (A437)    In its Response Brief, Maury

disingenuously asserts that Focus "voluntarily agreed to this scheduling order" and

that Focus "expressly asked the district court to adopt" the simultaneous deadlines

for Infringement and Invalidity Contentions.  (Appellee's Br. at 60-61)  Maury's

assertion is incorrect.  Once the district court set the December 20, 2010 deadline

for both Invalidity and Infringement Contentions, pursuant to an agreement by the

parties, the Court ordered an amendment to the scheduling order moving both

deadlines to again coincide on January 14, 2011.  (A534, n.3)  By keeping the

simultaneous deadline for both sets of contentions, the district court repeated its

mistake in declining to separate infringement from invalidity contentions.  *See*

*Ariba, Inc. v. Emptoris, Inc.*, No. 9-07-cv-0090, slip op. at 4 (E.D. Tex. Oct. 17,

2008) ("It is backwards for [Defendant] to define its invalidity contentions and

then allow [Plaintiff] to tailor its last-minute infringement theories.").

Maury's accusation that single loop probes, such as Focus's "wave probe,"

infringe the '069 patent requires an unreasonably expansive and strained reading of

the '069 patent claims.  Focus did not and could not have reasonably anticipated

Maury interpreting the claims of the '069 Patent to encompass systems utilizing

completely different equipment from that originally identified in Maury's

Amended Complaint.    Yet by doing so, Maury broadened the scope of its

allegations.  Importantly, by accusing systems using single loop "wave probes" of

infringing the '069 patent, rather than simply accusing a dual loop "IV probe," Maury by its own actions drew significant prior art into the ambit of this case.

Once Focus became aware of Maury's intentions to accuse single loop probes of infringing the '069 Patent, Focus moved swiftly to prepare its proposed Counterclaims. Maury's opposition to amendment seems designed to take advantage of the anomaly resulting from the scheduling order, which set the deadline for submission of invalidity contentions and amendments to the pleadings on the same day. Maury should not have been allowed to change the substance of its infringement allegations on the same date counterclaims were due, then block any attempts to submit counterclaims related to the new allegations on the grounds that amendments are untimely.

**B.** **Maury would not have suffered any prejudice if leave had been granted.**

In examining a motion for leave to amend pleadings, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In deciding whether a party will be prejudiced by allowing an amendment to the pleadings, courts consider whether the newly amended claims would greatly change the parties' position in the action and require the assertion of new defenses. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Moreover, the party opposing amendment bears the burden of showing prejudice.

25

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). *See also Breakdown Servs. Ltd. v. Now Casting, Inc.*, 550 F.Supp.2d 1123, 1132 (C.D. Cal. 2007) ("To justify denial of leave to amend, the prejudice must be substantial."). Focus's proposed amendment presented no new legal theories and required did not require Maury to craft any new legal defenses. *See Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996) ("Legal prejudice. . . is prejudice to some legal interest, some legal claim, some legal argument."). Because Maury would not have had to alter its position in any way, the district court's denial of Focus's leave to amend was error.

Rather, Maury simply chooses to ignore traditional conceptions of legal prejudice and instead relies on *MASS Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284 (E.D. Tex. 2008) for support of its "prejudice" claims. *Ergotron*, however, is wholly inapposite to the present case. In *Ergotron*, the defendant was sued for patent infringement, prompting the defendant's subsidiary to intervene and counterclaim against the plaintiff for infringement of a *separate patent*. *Id*. at 185. After the parties exchanged infringement contentions related to the counterclaim patent, the *Ergotron* court ordered the plaintiff to serve invalidity contentions by a date certain. *Id*. at 285-286. The plaintiff declined to do so and instead answered the counterclaim without asserting invalidity as an affirmative defense or otherwise counterclaiming to invalidate that patent. *Id*. at 286. More

than eight months later, the district court issued is claim construction opinion. *Id*. Only then did the plaintiff move to amend its answer to the counterclaim and serve the defendant with invalidity contentions directed to the patent asserted in its counterclaims. *Id*.

The differences between *Ergotron* and the present case illustrate the absurdity of Maury's position. Unlike Focus, the plaintiff in *Ergotron* delayed in seeking to add invalidity contentions until (1) months after having received Infringement Contentions and (2) <u>after</u> the district court had issued its opinion construing claims of that patent. In the present case, the parties had only recently exchanged claim constructions and no claim construction order had issued at the time Focus sought leave to amend. Furthermore, the plaintiff in *Ergotron* waited more than eight months after the court's deadline to submit invalidity contentions before moving to amend. This extensive delay was truly an appropriate example of engaging in a "wait and see" approach Maury accuses Focus of adopting here.

Maury's argument concerning Focus's supposed delay is likewise not convincing. Focus's motion to amend was filed within ten business days after the expiration of the district court's mandatory meet and confer period and was reasonable considering Focus's need for amendment and the particular circumstances presented by Maury's last-minute disclosure. *See Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-CV-434, 2008 WL 4755761, at *1 (E.D. Tex

Oct. 29, 2008) (allowing Defendant to submit "critical" invalidity contention when discovery was still ongoing and trial seven months away); *Advanced Micro Devices, Inc. v. Samsung Elecs., Co*., No. C 08-00986 SI, 2009 WL 890515 (N.D. Cal. April 1, 2009) (granting leave to amend invalidity contentions where leave sought three months after submitting original invalidity contentions).

Moreover, "delay alone is not sufficient to justify the denial of a motion requesting leave to amend".   *DCD Programs, Ltd.* 833 F.2d at 187.   Any short delay was necessitated, in part, because of local rule meet and confer requirements – another scheduling oddity that placed the deadline for submission of infringement contentions and amendments to the pleadings on the same date.   In the present case, and in contrast to *Ergrotron*, Focus promptly moved to amend its counterclaims as soon as it learned of Maury's revised allegations.

In addition, Maury's allegations of "prejudice" are specious.   In an attempt to avoid even the appearance of prejudice, Focus submitted its proposed Invalidity Contentions directed to the '069 patent on the same day it filed it motion to amend to challenge validity of the '069 patent.   The proposed amendment presented no additional burden to Maury, as Focus still would have been required to demonstrate invalidity of the '069 patent.  *See AK Steel Corp. v. Sollac,* 344 F.3d 1234, 1238-39 (Fed. Cir. 2003).   While Maury would undoubtedly prefer not to defend the '069 patent against invalidity counterclaims, this desire cannot fall

within the ambit of "legal prejudice." *See, e.g. Block v. First Blood Associates*, 988 F.2d 344, 350 (2nd Cir. 1993) ("In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction). Maury's arguments simply do not satisfy this or any other reasonable definition of legal prejudice.

## VI.  MAURY'S ATTEMPT TO CHALLENGE THE VALIDITY OF CLAIM 1 OF THE '293 PATENT IN THIS PROCEEDING IS IMPROPER.

In its response brief, Maury argues that claim 1 of the '293 is invalid because the phrase "means of electrical control" is indefinite. Maury did not raise this invalidity argument in a cross appeal. Consequently, the Court must strike this argument because by asserting this defense in its brief, Maury is seeking to impermissibly enlarge its rights under the district court's judgment of non-infringement of the '293 patent.

The Court recently addressed this very issue recently in *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1131-1132 (Fed. Cir. 2013). There, the district court had entered summary judgment of non-infringement in favor of the appellee and upon the appellant's appeal of summary judgment, appellee argued in its responsive brief that invalidity was an alternative ground for affirming the district court's

judgment. *Id.* at 1131-1132. Appellant responded in its reply brief that the Court should strike appellee's invalidity argument on the grounds that appellee failed to raise the issue in a cross appeal, as required by legal precedent and the rules of the Court. Moreover, appellant argued that allowing appellee to advance its invalidity argument in the absence of a cross appeal would impermissibly enlarge the scope of the district court's judgment. *Id.*

This Court agreed that it would be improper for appellee to raise the invalidity argument in its responsive brief, noting that the Supreme Court has long recognized that "[a]bsent a cross appeal, an appellee . . . may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Id.* at 1131 (citing *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999)). Further, the Court reasoned that its prior holding that a judgment of invalidity is broader than a judgment of non-infringement was predicated upon the fact that "a determination of infringement applies only to a specific accused product or process, whereas invalidity operates as a complete defense to infringement for any product, forever." *Id.* (citing *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004)). Accordingly, the Court found that invalidity cannot be an alternative ground for affirming a judgment of non-infringement absent a cross appeal and granted appellant's motion to strike. *Id.*

For the same reasons the Court refused to allow the appellant in *Lalor* to assert an invalidity defense in its responsive brief without first raising the issue in a cross-appeal, the Court must now strike Maury's invalidity argument and disregard it in its entirety.  Maury failed to properly raise the invalidity issue in a cross appeal and by clearly established precedent and the rules of this Court, Maury must not be allowed to enlarge its rights under the district court's summary judgment of non-infringement by having its invalidity argument considered.

## CONCLUSION

For the foregoing reasons, Focus respectfully submits that this Court should correct the district court's claim construction, reverse the Judgment of the district court below and remand to the district court for further proceedings consistent with this Court's decision.

Respectfully submitted,

By:    /s/ Michael R. Annis
Michael R. Annis
JoAnn T. Sandifer
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
314.480.1500 Phone; 314.480.1505 Fax
mike.annis@huschblackwell.com
joann.sandifer@huschblackwell.com

COUNSEL FOR DEFENDANT-
APPELLANT FOCUS MICROWAVES, INC.
AKA FOCUS MICRO ONDES INC.

## <u>CERTIFICATE OF SERVICE</u>

This certifies that on the 8th day of April, 2013, the foregoing NON-CONFIDENTIAL REPLY BRIEF OF APPELLANT was served via electronic mail and overnight delivery on the following counsel:

> Darren M. Franklin
> Gary A. Clark and Andrew Kim
> Sheppard Mullin Richter & Hampton LLP
> 333 South Hope Street, 43rd Floor
> Los Angeles, CA 90071
> dfranklin@sheppardmullin.com;
> gclark@sheppardmullin.com
> akim@sheppardmulling.com
>
> *Attorney for Plaintiff/Appellee*
> *Maury Microwave, Inc.*

I further certify that on this 8th day of April, 2013, a copy of the foregoing NON-CONFIDENTIAL REPLY BRIEF OF APPELLANT was filed with the United States Court of Appeals for the Federal Circuit via the Court's electronic filing system.

I caused the foregoing to be performed in accordance with my instructions in this case.

  /s/ Michael R. Annis

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Circuit Rule 28(a)(14) and Federal Rule of Appellate Procedure 32(a)(7)(C), counsel for Appellant hereby certifies that the foregoing Non-Confidential Reply Brief of Appellant complies with the type-volume limitation prescribed in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and was prepared using the following:

> Microsoft Word 2010;
> Times New Roman font;
> 14-point typeface, proportionally spaced.

Appellant's counsel has relied on the word count function of the word processing program used to prepare this Non-Confidential Reply Brief of Appellant, which states that this brief contains **6,931** words, excluding those portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

By:　/s/ Michael R. Annis
　　Michael R. Annis
　　JoAnn T. Sandifer
　　HUSCH BLACKWELL LLP
　　190 Carondelet Plaza, Suite 600
　　St. Louis, MO 63105
　　314.480.1500 Phone; 314.480.1505 Fax
　　mike.annis@huschblackwell.com
　　joann.sandifer@huschblackwell.com

　　COUNSEL FOR DEFENDANT-
　　APPELLANT FOCUS MICROWAVES,
　　INC. AKA FOCUS MICRO ONDES INC.